Not Reported in F.Supp.2d                                                                                                        Page 1
Not Reported in F.Supp.2d, 2000 WL 968828 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

►Tucker v. Cassiday, Schade & Gloor
N.D.Ill.,2000.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern Division.
Byrdie Brownridge TUCKER, Plaintiff,
v.
CASSIDAY, SCHADE & GLOOR, Defendants.
**No. 99 C 4001.**

July 13, 2000.

*MEMORANDUM OPINION*

KOCORAS, J.
*1 Before this Court is the Motion of Defendant Cassiday, Schade & Gloor ("Cassiday") to Dismiss three counts of Plaintiff Byrdie Brownridge Tucker's ("Tucker") third amended complaint. The motion is granted for the reasons set forth below.

BACKGROUND

On April 10, 2000, Plaintiff filed her third amended complaint consisting of a five count claim against her former employer, law firm Defendant Cassiday, Schade & Gloor. In essence, Tucker, an African-American woman, asserts Defendant maintained prejudicial working conditions and unlawfully terminated her on the basis of her race, religion, and/or age. Plaintiff further asserts that as a result, Defendant breached Plaintiff's employment contract and negligently inflicted emotional distress on Plaintiff. Defendant now moves to dismiss three of the five counts of the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The following facts have been gleaned from Plaintiff's complaint, the allegations of which must be assumed as true for purposes of this motion. *See**Bontkowski v. First National Bank of Cicero,* 998 F.2d 459, 461 (7th Cir.1993).

Cassiday apparently employed Tucker starting on December 31, 1995 through her termination date, which was sometime after February 1998, but that is not precisely ascertainable from the pleadings. Tucker asserts that Attorney Mary Finley, formerly of Defendant law firm, offered to hire her as an associate in November of 1995 at a starting annual salary of approximately $79,000, and Tucker accepted. Tucker claims that this was an implied oral contract between her and Ms. Finley, and that Ms. Finley represented to her that if she worked hard, she could make partner "like anyone else" at the Defendant law firm and that "she would receive the same treatment as every other associate and/or employee working [sic] Defendant firm."

Some time in February 1998, Tucker alleges her claims materialized. Tucker's first count ("Count I") claims Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)*et seq.* ("Title VII") on the grounds that Defendant: "a)[subjected] her to unequal terms and conditions of employment of similarly situated White persons and/or; b)[deprived] her of certain employment benefits with respect to her salary, supervision, and support staff [sic] similarly situated White persons and/or; c)[evaluated] her less favorably than similarly situated White [sic] and/or; d)[did not offer] her similar quality work assignments [sic] similarly situated White persons and/or; e)[did not offer] her similar consideration for promotion as similarly situated White persons; f)[made] negative references to her religion and religious leaders and/or; g)[terminated] her."The second count ("Count II") of Tucker's complaint alleges Defendant violated 42 U.S.C. § 1981 in transgressing her civil rights with regard to the employment contract between Tucker and Defendant. The allegations underlying the claim are similar to those alleged for the Title VII claim. The third count ("Count III") of Tucker's complaint alleges Defendant discriminated against Tucker on the basis of her age, violating the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"). The fourth count ("Count IV") of Tucker's complaint alleges breach of contract by Defendant through the actions of the Defendant as stated under the Title VII, § 1981, and ADEA claims, and that the breach of contract is material and does not constitute substantial performance of the contract. Finally, the fifth count ("Count V") of Tucker's complaint alleges Defendant negligently inflicted emotional distress (although in one key paragraph of the complaint, Tucker asserts Defendant

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00721    Document 10-3    Filed 02/27/2008    Page 2 of 5

Not Reported in F.Supp.2d                                                                                                 Page 2
Not Reported in F.Supp.2d, 2000 WL 968828 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

"intentionally inflicted emotional distress") on her through its discrimination against her because of her age and race, and that as a result Tucker suffered "injury of a personal and physical nature including: severe emotional distress and loss of consortium."

*2 Procedurally, this case has a protracted history. The first complaint was filed by Tucker, apparently *pro se*, around June 18, 1999, after she received her Equal Employment Opportunity Commission ("EEOC") notice of right to sue, but was not served on Defendant. By the time Defendant became aware of the complaint, Tucker had hired counsel, who filed for a motion to extend the time to serve the summons. Summons was finally served on Defendant around December 9, 1999. After three extensions, Plaintiff filed her amended complaint. Plaintiff filed a motion for leave to file a second amended complaint on March 2, 2000. In response, Defendant filed an Answer and a Motion to Dismiss or a Motion for a More Definite Statement. Plaintiff filed her Third Amended Complaint on April 10, 2000, but failed to appear for the status hearing on April 12, 2000. We gave Defendant until April 27, 2000 to file a responsive pleading.

Defendant Cassiday is seeking to dismiss the Count II § 1981 claim and the Count IV breach of contract claim pursuant to Rule 12(b)(6) on the grounds that Plaintiff's complaint fails to allege facts sufficient to state a claim. Cassiday seeks to dismiss the Count V Negligent Infliction of Emotional Distress claim pursuant to Rule 12(b)(1) on the grounds that Illinois state courts have exclusive jurisdiction over claims under the Illinois Human Rights Act, 775ILCS 5/1-101 et seq. ("IHRA") and the Illinois Workers Compensation Act, 820 ILCS 305/1 et seq. ("IWCA"). Before we address the merits of Defendant's motions, we set forth the legal standards that guide our analysis.

LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to dismiss claims over which a federal court lacks subject matter jurisdiction. Jurisdiction is the "power to decide" and must be conferred upon a federal court. See*In re Chicago, Rock Island & Pac. R.R. Co.,* 794 F.2d 1182, 1188 (7th Cir.1986). In reviewing a 12(b)(1) motion to dismiss, the court may look beyond the complaint and view any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction. See*United Transp. Union v. Gateway Western Ry. Co.,* 78 F.3d 1208, 1210 (7th Cir.1996) (citing *Bowyer v. United States Dept. of Air Force,* 875 F.2d 632, 635 (7th Cir.1989). The plaintiff bears the burden of establishing that the jurisdictional requirements have been met. See*Kontos v. United States Dept. of Labor,* 826 F.2d 573, 576 (7th Cir.1987). When a party moves for dismissal pursuant to Rule 12(b)(1), the nonmoving party must support its allegations with competent proof of jurisdictional facts. See*Thomas v. Gaskill,* 315 U.S. 442, 446 (1942).

As for the Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the purpose of the rule is to test the sufficiency of the complaint and not to decide the merits of the case. In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff, and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. See*Bontkowski v. First National Bank of Cicero,* 998 F.2d 459, 461 (7th Cir.1993). The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."See*Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Sherwin Manor Nursing Center, Inc. v. McAuliffe,* 37 F.3d 1216, 1219 (7th Cir.1994). In order to withstand a motion to dismiss, a complaint must allege facts sufficiently setting forth the essential elements of the cause of action. See*Lucien v. Preiner,* 967 F.2d 1166, 1168 (7th Cir.1992). It is with these principles in mind that we address the motions before us.

DISCUSSION

A. Breach of Contract

*3 The Defendant argues that the Plaintiff's breach of contract claim should be dismissed because an at-will employment contract is not breached by discharging the employee, whatever the reason. We agree. Neither party disputes the existence of some sort of relationship. Plaintiff's allegations with regard to the relationship between herself and the Defendant, however, are not sufficient to generate

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00721   Document 10-3   Filed 02/27/2008   Page 3 of 5

Not Reported in F.Supp.2d                                                                                           Page 3
Not Reported in F.Supp.2d, 2000 WL 968828 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

anything but an at-will employment relationship. Plaintiff does not allege any promise bargained for to suggest a more formal contractual arrangement where duration is specified. See *Tolmie v. United Parcel Service,* 930 F.2d 579, 581 (7th Cir.1991) (stating "[N]ot just any offer will support an oral employment contract. On the contrary, the offer must encompass terms that are 'clear and definite'.").

Plaintiff asserts that Finley's oral promises to the Plaintiff that "if [Plaintiff] worked hard she would be able to be a partner also [sic] like any one else at the firm," and that "[she would] receive the same treatment as every other associate and/or employee working [sic] Defendant firm" suffice to generate a contract rather than an at-will relationship. These oral promises, even if true, do not meet the clear and definite standard to overcome the presumption in Illinois in favor of at-will employment relationship. See *LaScola v. U.S. Sprint Communications,* 946 F.2d 559, 564-565 (7th Cir.1991); *Kalush v. Deluxe Corp.,* 171 F.3d 489, 492 (7th Cir.1999) (stating "In Illinois, employment contracts are presumed to be at-will and terminable by either the employee or the employer.") (citing *McInerney v. Charter Golf, Inc.,* 176 Ill.2d 482, 680 N.E.2d 1347, 223 Ill.Dec. 911, (Ill.1997).

Basic contract theory requires consideration or forbearance in exchange for a promise. See *Kalush v. Deluxe Corp.,* 171 F.3d 489, 492 (7th Cir.1991) (stating "[In order to find an employment contract other than one at will], [u]nder Illinois law, an oral employment contract must be supported by consideration adequate to suggest that the alleged agreement involved a bargained-for exchange of mutual obligations."); E. Allan Farnsworth, Contracts, §§ 2.5-2.8, 3.6 et seq. (3d ed.1999). Although some sort of working relationship existed between Tucker and Defendant, nowhere in the complaint does Plaintiff assert consideration or forbearance provided in exchange for the additional alleged promises by the Defendant. Facially, the second promise does not even prompt forbearance or consideration by the Plaintiff. As such, the promises are unenforceable even if Defendant made them.

The at-will employment relationship presumption is rebuttable, and an employee may rebut the presumption by a showing that the parties contracted otherwise. See *Tolmie v. United Parcel Service,* 930 F.2d 579, 580 (7th Cir.1991). Tucker, however, does not allege that there was an offer of permanent employment nor employment for a specific duration or a task, or any other characteristics of a contractual relation which might be sufficient to overcome the presumption of the at-will relation. *Zemke v. City of Chicago,* 100 F.3d 511, 513 (7th Cir.1996); *Brusilovsky v. Figgie International,* 1995 WL 330809 *4-5 (N.D.Ill.1995). An oral contract with such characteristics must be evidenced by (1) a clear and definite promise and (2) adequate consideration for the promise. See *Kalush v. Deluxe Corp.,* 171 F.3d 489, 492 (7th Cir.1999). Plaintiff has not plead a clear and definite promise of permanent or time-specific employment, nor does she assert adequate consideration for any promise that could be construed as such.

*4 In at-will employment relationship, the employer can terminate the employee for any reason. See *Tolmie v. United Parcel Service, Inc.,* 930 F.2d 579, 580 (7th Cir.1991) (stating "Under Illinois law, ... employment contracts are presumed to be 'at will' and are therefore terminable by either party for good reason, bad reason, or no reason at all."); *Harrison v. Sears, Roebuck & Co.,* 189 Ill.App.3d 980, 987, 546 N.E.2d 248, 252, 137 Ill.Dec. 494, 498 (Ill.App.1989) (stating "The employer or the employee may terminate the [at will] relationship at any time with or without cause and without incurring liability."). Tucker does not seem to allege violations of any part of the relationship which might be actionable under general contract theory other than termination. Plaintiff alleges no reason why the Court should treat the relationship as anything but at-will or why the Court should infer a breach of contract as a result of Plaintiff's termination.

Accordingly, we find no breach of contract. Thus, we need not address Defendant's assertion that enforcement of the oral employment relation between the Defendant and the Plaintiff is barred by the Statute of Frauds.

B. § 1981 Claim

Defendant moves to dismiss Tucker's § 1981 claim on the theory that Tucker does not properly assert the existence of a contract to form the basis of a § 1981 claim. We agree. § 1981 prohibits all racial discrimination with respect to making and enforcing contracts. Given that we find Tucker's relationship to

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:08-cv-00721   Document 10-3   Filed 02/27/2008   Page 4 of 5

Not Reported in F.Supp.2d                                                                     Page 4
Not Reported in F.Supp.2d, 2000 WL 968828 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

Defendant is at-will, such a relation cannot form the basis for a § 1981 claim. See *Gonzalez v. Ingersoll Mill. Mach. Co.*, 133 F.3d 1025, 1034 (7th Cir.1998) (stating *in dicta*, "In order to bring a section 1981 claim there must at least be a contract.")

The Seventh Circuit has yet to squarely address this issue, and there is authority on both sides. See *Payne v. Abbot Laboratories*, 1999 WL 116208 (N.D.Ill.1999); *Blumenthal v. Murray*, 995 F.Supp. 831 (N.D.Ill.1998) (holding failure to plead factual existence of a contract is fatal to plaintiff's § 1981 claim); *Jones v. Becker Group of O'Fallon Div.*, 38 F.Supp.2d 793 (E.D.Mo.1999); *but see Lauture v. International Business Machines, Corp.*, 216 F.3d 258, 2000 WL 791769 (2nd Cir.2000); *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015 (4th Cir.1999); *Fadeyi v. Planned Parenthood Ass'n of Lubbock*, 160 F.3d 1048 (5th Cir.1998); *Riad v. 520 S. Michigan Ave. Associates Ltd.*, 78 F.Supp.2d 748 (N.D.Ill.1999). The language of § 1981 presupposes the existence of a contractual relationship between the parties. Because at-will relationships do not have the same status as contractual ones in Illinois, we find persuasive the reasoning of those courts which find that an at-will employee cannot establish the existence of a contractual relationship sufficient to support a § 1981 cause of action. See *Beraha v. Baxter Health Care Corp.*, 956 F.2d 1436, 1444-1445 (7th Cir.1992) (finding that implied covenant of good faith and fair dealing, applied to all contracts in Illinois, cannot be read to change the nature of an at will relationship); *Duldulao v. St. Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 489, 505 N.E.2d 314, 318, 106 Ill.Dec. 8, 12 (Ill.1987) (recognizing that enforceable contractual rights are created only if contract-formation requirements are met.) Since we have found that Tucker's relationship was at-will, she cannot maintain a contractual relationship sufficient to support a § 1981 claim.

C. Negligent Infliction of Emotional Distress

*5 Defendant asserts that Plaintiff's Negligent Infliction of Emotional Distress claim is preempted by IHRA and the IWCA. We agree. Tucker asserts that as a result of Defendant's, "acts and/or omissions, Plaintiff PLAINTIFF [sic] suffered injury of a personal and physical nature including: severe emotional distress and loss of consortium." Defendant argues that the negligent infliction of emotional distress claim is preempted by the exclusivity provision of the IHRA. The IHRA states in relevant part: "Except as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." See 775 ILCS 5/8-111(C). Illinois enacted the IHRA to create a state cause of action for various civil rights violations amounting to discrimination based on, among others, race and age. See 775 ILCS 5/2-102; see *Smith v. Chicago School Reform Bd. of Trustees*, 165 F.3d 1142, 1150-1151 (7th Cir.1999); *Cavalieri-Conway v. L. Butterman & Associates*, 992 F.Supp. 995 (N.D.Ill.1998).

The IHRA preempts state law tort claims in state and federal courts and provides its own adjudication mechanism if the underlying facts are "inextricably linked" to civil rights violations listed in the IHRA. See *Smith*; *Krocka v. Riegler*, 958 F.Supp. 1333 (N.D.Ill.1997); *Westphal v. City of Chicago*, 8 F.Supp.2d 809 (N.D.Ill.1998); *Huff v. Sheahan*, 1999 WL 182149,*5 (N.D.Ill.1999). In *Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill.2d 507, 639 N.E.2d 1273, 203 Ill.Dec. 454 (Ill.1994) and *Maksimovic v. Tsogalis*, 177 Ill.2d 511, 687 N.E.2d 21, 227 Ill.Dec. 98, (Ill.1997), Illinois courts clarified the parameters of how tort claims were "inextricably linked" with the underlying facts of the civil rights claim. *Geise* held that if a common law tort action is in essence one which seeks redress for a "civil rights violation" as defined by the Act and there is no basis for the action other than the [IHRA], the [court] lacks jurisdiction to adjudicate the claim." *Geise* at 516. The court in *Geise* observed that but for the [IHRA]'s proscription against sexual harassment, the plaintiff would have no legally cognizable claim against her employer. *Id.* at 517. By contrast, in *Maksimovic* plaintiff asserted claims of assault, battery, and false imprisonment which the court held were not "inextricably linked" to the sexual harassment claim where the plaintiff alleged facts sufficient to form the basis of elements of each of those long-standing independent torts. *Maksimovic* at 517.

Tucker bases her claim of negligent infliction of emotional distress exclusively on claims covered by the IHRA. She states, "The Defendant ... intentionally [sic] inflicted emotional distress on the Plaintiff by the following outrageous and extreme conduct: (a) subjecting her to unequal terms and

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

conditions of employment [sic] similarly situated White [sic] and persons under 40 years of age and/or; (b) depriving her of certain employment benefits with respect to salary, work related assignments, supervision and staff [sic] similarly situated White [sic] and persons under 40 years of age and/or; (c) evaluating her less favorably than similarly situated White [sic] and persons under 40 years of age and/or; (d) terminating her."Tucker does not assert anything in the complaint which can be construed as a tort independent of claims either based on age or race. Take away the allegations of race and age discrimination, and there is no foundation for Tucker's emotional distress. As such, no independent basis exists on which to maintain Plaintiff's tort claim, and therefore, we find that her claim for negligent infliction of emotional distress is preempted by the IHRA.

**\*6** As for preemption under the IWCA, Plaintiff agrees with Defendant that the claim for negligent infliction of emotional distress is preempted. Therefore,and given this court's reasoning with regard to the IHRA claim, we find it unnecessary to consider the issue further. We grant Defendant's motion to dismiss for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, we grant Defendant's motion to dismiss for failure to state a claim and Defendant's motion to dismiss for lack of subject matter jurisdiction.

N.D.Ill.,2000.
Tucker v. Cassiday, Schade & Gloor
Not Reported in F.Supp.2d, 2000 WL 968828 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.