Slip Copy  Page 1
Slip Copy, 2007 WL 2245775 (D.N.J.), RICO Bus.Disp.Guide 11,333
(Cite as: Slip Copy)

CReddy v. Medquist, Inc.
D.N.J.,2007.

United States District Court,D. New Jersey.
Krishna REDDY, Plaintiff,
v.
MEDQUIST, INC., et al., Defendants.
Civil No. 06-4410 (RBK).

Aug. 1, 2007.

Krishna Reddy, Redlands, CA, pro se.
Marc J. Gross, Greenbaum, Rowe, Smith & Davis, LLP, Roseland, NJ, Olivier Salvagno, Greenbaum, Rowe, Smith & Davis, LLP, Woodbridge, NJ, Brian Thomas Frawley, Sulivan & Cromwell, New York, NY, for Defendants.

**OPINION**

KUGLER, United States District Judge.

*1 Before the Court is a motion by Defendant Medquist, Inc. ("Medquist") to dismiss the complaint or in the alternative, for a more definite statement. Also before the Court is a cross motion by pro se Plaintiff Krishna Reddy ("Plaintiff") for a judgment on the pleadings. For the reasons provided below, the Court grants Medquist's motion and denies Plaintiff's motion.

**I. Background**[FN1]

> FN1. On a motion to dismiss, the Court accepts all allegations in the Complaint as true.

In September 1992, Plaintiff accepted employment as a Medical Transcriptionist ("MT") with Transcriptions Limited, Inc., located in Culver City, which Medquist later acquired. In 1996, Plaintiff supplemented her income by working as an MT with another company, which became MRC Group. MRC Group implemented changes that reduced Plaintiff's compensation, causing her to seek other employment. Medquist subsequently acquired MRC Group.

Plaintiff found part time employment with Your Office Genie ("YOG"), which Medquist also acquired. After this acquisition, Medquist officially employed Plaintiff in two locations, and the management of the former-YOG office asked Plaintiff to opt to work for only one Medquist branch. Plaintiff opted for the branch that was once YOG.

Plaintiff alleges that several things transpired that substantially decreased her compensation and the quality of her work environment. Specifically, Plaintiff states that Medquist managers forced Plaintiff to provide a schedule, although the terms of her contract did not require her to provide a schedule. Plaintiff suspects this was a tactic to "evade paying" bonuses to Plaintiff, because Medquist calculated bonuses based on work performed during unscheduled hours. In addition, Plaintiff states that Medquist management harassed her, and gave her difficult work assignments. Plaintiff further alleges that the transcription lines increased in length, meaning she produced fewer total lines in her transcriptions. Because companies pay MTs based on the number of lines transcribed, Plaintiff claims that her pay decreased by 25-50%. Plaintiff also states that other MTs received $.10 per line, while she received only $.09 per line.

Plaintiff contacted her supervisor, Ms. Pinkstaff, regarding her issues with the changes implemented by management. Plaintiff states that Ms. Pinkstaff's response was "unsatisfactory," and that Plaintiff then requested a transfer out of the YOG branch of Medquist. Ms. Pinkstaff then terminated Plaintiff's contract with Medquist in retaliation for Plaintiff's attempt to transfer to another branch.

Plaintiff received an oral offer of employment from the Medquist branch located in Culver City, where Plaintiff initially worked. However, Plaintiff later learned that she was ineligible for rehire status at any Medquist branch. Plaintiff alleges that her attempts to file a formal grievance were unsuccessful.

Finally, Plaintiff claims that, through her employment with another transcription company, she discovered that Medquist's transcription software has a "built-in" feature that fails to accurately count the

characters produced by MTs, and which decreases line counts by approximately one-half.

*2 On September 19, 2006, Plaintiff filed a complaint in the United States District Court for the District of New Jersey. The complaint claims that Defendants Medquist; Royal Philips Electronics of the Netherlands ("Philips"); Kathy Pinkstaff; April Porter; Mayra Figueras; Russell Dunn; Steven E. Allen; Judy Compagno; Jason Gerster; John W. Quaintance; John M. Suender; Ethan H. Cohen; and Stephen H. Rusckowski (collectively "Defendants") violated § 1962 of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Specifically, Plaintiff alleges that Defendants "indulged in mail fraud" by "increasing the number of characters in a line for the MTs and decreasing the number of characters in a line for [their] clients."

In Count Two, Plaintiff alleges that Defendants committed fraud when Defendants "unilaterally increased the number of characters per line without [Plaintiff's] consent" and Defendants concealed that fraud by "misrepresenting to [Plaintiff] that [she] was being paid at 65 character lines." Also in Count Two, Plaintiff alleges that "[D]efendants conspired with one another to route MTs' income to Medquist and Philips, illegally, to enrich themselves as well as to help deceive their respective investors."

In Count Three, Plaintiff alleges that Medquist breached her employment contract, as well as the covenant of good faith and fair dealing. In Count Four, Plaintiff alleges that Defendants "fraudulently interfered with the contract [Plaintiff] had with Medquist." Finally, in Count Five, Plaintiff alleges both intentional and negligent infliction of emotional distress.

Medquist moves to dismiss the RICO claims, as well as all state law claims.[FN2] Plaintiff opposes the motion.

> FN2. Medquist states that it moves to dismiss "all state law claims," but Medquist fails to address Plaintiff's breach of contract claim in its moving papers.

## II. Standard of Review

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept Plaintiff's allegations along with all reasonable inferences that may be drawn from them, as true. *Doe v. Delie,* 257 F.3d 309, 313 (3d Cir.2001) (citing *Piecknick v. Commonwealth of Pennsylvania,* 36 F.3d 1250, 1255 (3d Cir.1994)). The Court may dismiss the Complaint only if Plaintiff can prove no set of facts that would entitle them to relief. *Burstein v. Retirement Account Plan for Employees of Allegheny Health Educ. & Research Found.,* 334 F.3d 365, 374 (3d Cir.2003) (citation omitted).

## III. Discussion

### A. RICO

Medquist moves to dismiss Plaintiff's RICO claim, asserting that Plaintiff lacks standing to assert a claim under 18 U.S.C. § 1962.

The Third Circuit stated that § 1962 of RICO "was primarily directed at halting the investment of racketeering proceeds into legitimate businesses, including the practice of money laundering." *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1188 (3d Cir.1993) (citing *Brittingham v. Mobil Corp.,* 943 F.2d 297, 303 (3d Cir.1991)). Under § 1962, "a plaintiff must allege: (1) that the defendant has received money from a pattern of racketeering activity; (2) invested that money in an enterprise; and (3) that the enterprise affected interstate commerce." *Lightning Lube,* 4 F.3d at 1188. "Furthermore, the plaintiff must allege an injury resulting from the investment of racketeering income distinct from an injury caused by the predicate acts themselves." *Id.* (citing *Glessner v. Kenny,* 952 F.2d 702, 708 (3d Cir.1991)); *Banks v. Wolk,* 918 F.2d 418, 421 (3d Cir.1990); *Rose v. Bartle,* 871 F.2d 331, 357-58 (3d Cir.1989)). "This allegation is required because section 1962(a) is directed specifically at the use or investment of racketeering income, and requires that a plaintiff's injury be caused by the use or investment of income in the enterprise." *Id.* (internal quotations omitted).

*3 In this case, Plaintiff fails to allege that her injury flows from the investment of the income Defendants received from the alleged fraudulent activity. Rather, Plaintiff alleges that her economic

injury flows from the "predicate acts," in this case the alleged fraud, which includes the decrease in line counts for MTs but the increase in charges to clients. As a result, Plaintiff lacks standing to assert this claim under 18 U.S.C. § 1962. Accordingly, the Court grants Medquist's motion to dismiss Count One with regard to Medquist.

B. *State Law Claims*[FN3]

> FN3. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a).

*1. Fraud*

In *Spring Motors Distributors, Inc. v. Ford Motor Co.,* 489 A.2d 660 (N.J.1985), the New Jersey Supreme Court endorsed the economic loss doctrine, which "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract."*Duquesne Light Co. v. Westinghouse Elec. Co.,* 66 F.3d 604, 618 (3d Cir.1995). However, the New Jersey Supreme Court never explicitly applied the economic loss doctrine to claims of fraud. *Gleason v. Norwest Mortgage, Inc.,* 243 F.3d 130, 144 (3d Cir.2001). As a result, state courts struggle with the issue of whether to prohibit fraud claims if the underlying facts are the same as a contract claim. *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.,* 226 F.Supp.2d 557, 562 (D.N.J.2002).

Federal district courts interpreting New Jersey common law consistently hold that "fraud claims not extrinsic to underlying contract claims are not maintainable as separate causes of action."*Bracco Diagnostics,* 226 F.Supp.2d at 564 (citing *Gleason,* 243 F.3d at 144)). One district court explained that "an act that is in breach of a specific contractual undertaking would not be extrinsic, but an act that breaches some other duty would be."*Id* . (citing *Emerson Radio Corp. v. Orion Sales, Inc.,* No. 95-6455, 2000 WL 49361, at *7 (D.N.J.2000)). The *Emerson* court further illustrated "with the example of fraud, to break a promise is to breach a contractual duty; to falsely state that one intends to honor a promise is a misstatement of present fact and breaches a separate and extraneous duty not to commit fraud."*Id.* (citing *Emerson,* 2000 WL 49361, at *7).

In this case, Plaintiff alleges fraud that is, at its heart, a breach of contract claim. Although the language of the complaint couches the claim as one for fraud in the inducement, a closer look reveals that Defendants allegedly contracted with Plaintiff for employment as an MT, and subsequently unilaterally changed the terms of the contract. The Third Circuit recently held, "The economic loss doctrine is designed to place a check on limitless liability ... and [to] establish clear boundaries between tort and contract law."*Werwinski v. Ford Motor Co.,* 286 F.3d 661, 680 (3d Cir.2002). The Third Circuit further stated that where there are two competing and sensible interpretations of state law, district courts "should opt for the interpretation that restricts liability, rather than expands it."*Id.* Therefore, this Court finds that the economic loss doctrine bars Plaintiff's fraud claims, and the Court grants Medquist's motion to dismiss with regard to this claim.[FN4]

> FN4. The Court need not reach the issue of whether Plaintiff's Complaint meets the heightened pleading standards for a fraud claim as required by Federal Rule of Civil Procedure 9(b).

*2. Civil Conspiracy*

*4 Medquist also moves to dismiss Plaintiff's claim for civil conspiracy, arguing that if the fraud claim fails due to the economic loss doctrine, then the conspiracy to commit fraud must likewise fail. In the alternative, Medquist argues that Plaintiff failed to adequately plead a prima facie case of civil conspiracy.

Under New Jersey law, the elements of a civil conspiracy are "(1) a combination of two or more persons; (2) a real agreement or confederation with a common design; (3) the existence of an unlawful purpose to be achieved by unlawful means; and (4) special damages."*Farris v. County of Camden,* 61 F.Supp.2d 307, 330 (D.N.J.1999). To sustain an action for civil conspiracy, "a plaintiff must also point to (1) an overt act of one or more of the conspirators in furtherance of the conspiracy; and (2) consequential damage to the rights of another, of which the overt act is the proximate cause."*Id.* A claim for civil conspiracy will not lie "unless defendants committed an act which would be

actionable even without the conspiracy."*Id.*

The New Jersey Superior Court, Appellate Division, affirmed the trial court's dismissal of a claim for civil conspiracy when the underlying alleged tort of fraud was not sustainable. *In re Lead Paint Litig.*, No. A-1946-02T3, 2005 WL 1994172, at *20 (N.J.Super.App.Div. Aug. 17, 2005) (rev'd on other grounds, 924 A.2d 484 (N.J.2007). Likewise, because this Court finds that Plaintiff's substantive claim for fraud fails as a matter of law, there is no basis to support Plaintiffs' claim for civil conspiracy.

*3. Interference with Employment Contract*

Medquist moves to dismiss Plaintiff's claim that Medquist interfered with her employment contract.

It is well-established in New Jersey, "a cause of action for tortious interference with contract cannot be directed against a defendant who is a party to the contract."*See, e.g., Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 173 (3d Cir.2001) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 37-38 (N.J.1989)).

The Court finds that Medquist, as a party to the employment contract, cannot interfere with the performance of the contract. Therefore, the Court grants Medquist's motion to dismiss.

*4. Intentional and Negligent Infliction of Emotional Distress*[FN5]

> FN5. Plaintiff alleges both intentional and negligent infliction of emotional distress arising from the same operative facts. Given the lack of language in Plaintiff's complaint relating to negligence, and the use of language more appropriate to an intentional tort, this Court construes Plaintiff's complaint as alleging a claim only for intentional infliction of emotional distress.

Finally, Medquist moves to dismiss Plaintiff's claim for intentional infliction of emotional distress.

To adequately state a claim for intentional infliction of emotional distress, a plaintiff must allege "conduct which is intentional or reckless; conduct which is extreme and outrageous beyond all bounds of decency; severe emotional distress suffered by the plaintiff; and the conduct complained of was the proximate cause of the emotional distress suffered. *Buckley v. Trenton Saving Fund Soc'y*, 544 A.2d 857, 863 (N.J.1988)). New Jersey courts have found this "elevated threshold" to be satisfied only in extreme cases. *Id.* at 864.More specifically, the conduct alleged must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."*Id*. The severity of the emotional distress is a question of law and fact, and the Court must initially determine whether, as a matter of law, such emotional distress can be found. *Id.*

*5 Importantly, New Jersey courts hold that it is "extremely rare to find conduct in the employment context that" rises to the level of outrageousness necessary. *Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 297 (N.J.Super.App.Div.2001)."[W]hile loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event and cannot provide a basis for recovery for infliction of emotional distress."*Id.*

The majority of plaintiff's allegations against Medquist defendants involve employment-related complaints regarding alleged changes in company policy, poor work environment, retaliatory acts, loss of bonuses, inability to transfer to a new office, a refusal to pursue grievances, unpleasant work assignments, and ultimate termination. This alleged misconduct, viewed in the light most favorable to plaintiff, is not so outrageous in conduct, or so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. *See, e.g., Settineri v. PNC Bank Corp.*, 854 A.2d 922, 927 (N.J.Super.App.Div.2004) (affirming dismissal of an intentional infliction of emotional distress claim that arose out of allegations of employment discrimination, based upon negative performance appraisals, reprimands and the denial of transfer requests). Therefore, the Court grants Medquist's motion to dismiss this count of the complaint.

### III. CONCLUSION

For the foregoing reasons, the Court grants

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Medquist's motion to dismiss.[FN6] Only the breach of contract claim remains against Medquist. However, all other defendants remain.

>   FN6. Because the Court grants Medquist's motion to dismiss, the Court denies Plaintiff's motion for judgment on the pleadings.

D.N.J.,2007.
Reddy v. Medquist, Inc.
Slip Copy, 2007 WL 2245775 (D.N.J.), RICO Bus.Disp.Guide 11,333

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.