Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 1999 WL 202907 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

**C**Mendez v. Henniger
N.D.Ill.,1999.
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
Juan MENDEZ, Plaintiff,
v.
FRANKLIN PARK POLICE OFFICERS
HENNIGER, # 77, and O'Doherty, # 83, and the
Village of Franklin Park, Defendants.
No. 98 C 2694.

March 29, 1999.

MEMORANDUM OPINION AND ORDER

GOTTSCHALL, District J.
  *1 Plaintiff, Juan Mendez, brings this action
against the Village of Franklin Park and two of its
police officers, Henniger and O'Doherty, alleging
various counts pursuant to 42 U.S.C. § 1983 as well
as several pendant state law claims. Defendants have
moved to dismiss four of the counts in their entirety
pursuant to FED. R. CIV. P. 12(b)(6). Defendants
have also moved to strike Mendez's request for
punitive damages in regard to each of his state law
counts. For the following reasons, defendants' motion
is granted in part and denied in part.

I. *BACKGROUND*FN1

        FN1. The following facts are taken from
        Mendez's Complaint and are assumed to be
        true. *See Frederick v. Simmons Airlines,
        Inc.,* 144 F.3d 500, 502 (7th Cir.1998).

  In the early morning hours of May 2, 1997,
Mendez, a Mexican-American, left work and drove to
his apartment, which is located in Franklin Park.
When he arrived home, he found a car parked in his
parking spot. Unable to park his car in its assigned
spot, Mendez parked it behind the car occupying his
spot. He exited his car and stood on the porch outside
his apartment.

  Mendez then observed a police car pull up and
saw an officer FN2 shine a flashlight inside his car. He

approached the officer and attempted to explain why
his car was parked where it was. The officer told
Mendez that his car was parked illegally and would
be towed. When Mendez offered to move the car, the
officer refused the offer and again stated that the car
would be towed. Mendez then "expressed his concern
that he was being discriminated against by the
defendants as a Hispanic person."Complaint ¶ 12.

        FN2. Mendez does not identify whether this
        officer was Henniger or O'Doherty.

  According to Mendez, both officers Henniger
and O'Doherty then assaulted him."Defendants then
pushed Mendez in the chest, grabbed plaintiff's neck,
and choked him causing him pain and injury.
Defendants continued to strike plaintiff Mendez
about his face, head and body causing additional pain
and injury."Complaint ¶ 13. The officers then
handcuffed Mendez, transported him to the police
station, and had his car towed.

  While in the police car with the officers, Mendez
claims that the officers "discussed and agreed upon a
plan to cover up their actions against the
plaintiff."Complaint ¶ 15. Mendez further alleges that
he was once again beaten about the face, head, and
body by Henniger and O'Doherty after his arrival at
the police station.

  Mendez further claims that defendants
wrongfully charged him with battery and resisting a
peace officer and that they "made out false and
incomplete official reports and gave a false and
incomplete version of the events to their superiors in
order to cover up their own misconduct."Complaint ¶
17. Mendez was detained for a few hours pending
posting of bond. According to Mendez, all charges
against him were subsequently dismissed on
December 16, 1997, and the case was terminated in
his favor.

  Mendez then brought this action against officers
Henniger and O'Doherty, in their individual
capacities, as well as against the Village of Franklin
Park. Defendants now move to dismiss four counts of
his ten-count complaint: Count III (§ 1983 malicious

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 202907 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

prosecution); Count IV (§ 1983 conspiracy); Count V (intentional infliction of emotional distress under Illinois law); and Count VII (malicious prosecution under Illinois law). Defendants also move to strike Mendez's request for punitive damages in regard to his pendent state law claims.

## II. DISCUSSION

*2 The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of a complaint, not to decide the merits of the case. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir.1990). On a motion to dismiss, the court must assume the allegations of the complaint are true and construe them in the light most favorable to the plaintiff. See Doherty v. City of Chicago, 75 F .3d 318, 322 (7th Cir.1996). Accordingly, a complaint should not be dismissed "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

### A. Count III: § 1983 Malicious Prosecution

To state a claim under 42 U.S.C. § 1983 for malicious prosecution, Mendez must allege: 1) the elements of malicious prosecution under Illinois law; 2) that the malicious prosecution was committed by state actors; and 3) that he was deprived of liberty. See Reed v. City of Chicago, 77 F.3d 1049, 1051 (7th Cir.1996). To state a claim for malicious prosecution under Illinois law, Mendez must allege that: 1) he was subjected to judicial proceedings; 2) for which there was no probable cause; 3) the defendants instituted or continued the proceedings maliciously; 4) the proceedings were terminated in his favor; and 5) he suffered injury. See id.

The court finds that Mendez has stated a claim for malicious prosecution under § 1983 by alleging that officers Henniger and O'Doherty falsely charged him with battery and resisting a peace officer and by alleging that the officers made out "false and incomplete official reports and gave a false and incomplete version of the events" to cover up their own misconduct. Mendez has clearly alleged that the malicious prosecution was committed by state actors (two police officers) and that he was deprived of liberty (arrest followed by detention at the Franklin Park police station for three hours).See Smart v.

Board of Trustees of the University of Illinois, 34 F.3d 432, 434 (7th Cir.1994) (holding that an "arrest or other seizure" constitutes an "infringement of liberty" for purposes of a malicious prosecution action).[FN3] He has also, as the court discusses infra section II.D., sufficiently alleged the elements of a malicious prosecution claim under Illinois law.

> FN3.Spiegel v. Rabinowitz, 121 F.3d 251 (7th Cir.1997), is not to the contrary. Defendants cite Spiegel to argue that Mendez has not alleged the type of "palpable consequences" necessary to support a claim of malicious prosecution under § 1983. As an initial matter, the court notes that the plaintiff in Spiegel improperly presented his malicious prosecution claim within the confines of Fourteenth Amendment substantive due process. See id. at 254.But more to the point, Spiegel is distinguishable from this case because the injuries Spiegel alleged-eviction, adverse employment action, and loss of income-were not deprivations of property of a constitutional magnitude sufficient to bring a federal malicious prosecution claim. See id.Mendez, unlike Spiegel, alleges deprivation of a protected interest of a constitutional magnitude-deprivation of liberty due to arrest and detention-which the Seventh Circuit has recognized as cognizable injury for purposes of § 1983 malicious prosecution actions.

Although a malicious prosecution action against police officers is "anomalous" because "the State's Attorney, not the police, prosecutes a criminal action," the Seventh Circuit has recognized that "a wrongful arrest could be the first step towards a malicious prosecution," subject to the caveat that "the chain of causation" will normally be "broken by an indictment, absent an allegation of pressure or influence exerted by the police officers, or knowing misstatements made by the officers to the prosecutor."Reed, 77 F.3d at 1053. In Reed, the court affirmed the district court's dismissal of plaintiff's complaint because the plaintiff failed to allege any improper influence or conduct. See id.The court accordingly rejected the plaintiff's attempt to "shoehorn a wrongful arrest claim into a malicious prosecution claim."Id. at 1051.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*3 Unlike the plaintiff in *Reed,* Mendez clearly alleges wrongful conduct by the officers after his arrest. Aside from alleging that the officers wrongfully brought two charges against him, he alleges that they made out false official reports and provided their supervisors with false information. Assuming the truth of these allegations, as the court must at this stage, the court cannot say that Mendez has merely attempted to shoehorn a wrongful arrest claim into a malicious prosecution claim.

Accordingly, defendants' motion to dismiss Count III is denied.

B. *Count IV: § 1983 Conspiracy*

To state a claim under 42 U.S.C. § 1983 for conspiracy, Mendez must allege "that the defendants directed themselves toward an unconstitutional action by virtue of a mutual understanding" and must support this allegation with factual allegations suggesting a "meeting of the minds." *Kunik v. Racine County,* 946 F.2d 1574, 1580 (7th Cir.1991). Unlike other types of claims, conspiracy is subject to a heightened pleading standard; the plaintiff must allege facts in support of the cause of action. As Mendez has pointed out, however, he need not plead specific facts detailing the conspiratorial agreement. Rather, he need only plead "sufficient facts from which a conspiracy may be inferred; the facts detailing the conspiratorial agreement can be pleaded generally, while those facts documenting the overt acts must be pleaded specifically."*Quinones v. Szorc,* 771 F.2d 289, 290 (7th Cir.1985).

Having pled that Henniger and O'Doherty "discussed and agreed upon a plan to cover up their actions against the plaintiff" while in his presence in the squad car, and having further pled that the officers made out false reports and gave a false rendition of the events to their supervisors, Mendez appears to have pled conspiracy sufficiently at least as to the cover up, if not as to the arrest and beatings he alleges occurred.[FN4]The court need not, however, decide whether Mendez's allegations are sufficiently specific because it finds that they do not state a cause of action under § 1983 for another reason: the § 1983 charge neither alleges any injury over and above the underlying torts at issue nor casts the net of liability over any additional defendants not otherwise reached.

FN4. The court notes that Mendez's complaint includes no allegation, even general, of an agreement between officers Henniger and O'Doherty to assault Mendez at the scene of the arrest. Rather, Mendez first refers to an "agreement" in reference to the discussion in the squad car, concerning how to cover up the alleged assault and false arrest.

In *Niehus v. Liberio,* 973 F.2d 526, 531 (7th Cir.1992), the Seventh Circuit discussed claims of conspiracy pursuant to § 1983 as follows:
There is no tort without an injury.... So an interrupted conspiracy will usually not be actionable, while a completed one will inflict no injury over and above the tort that the conspirators had conspired to commit. All this makes civil conspiracy, outside of such special cases as antitrust and labor, a rather exotic plant in the legal greenhouse.

*Id.* at 531-32.The court noted, however, that a civil conspiracy charge might be used to "spread[ ] the net of liability to additional persons."*Id.* at 532;*see also Jones v. City of Chicago,* 856 F.2d 985, 992 (7th Cir.1988) (holding that "the function of conspiracy doctrine is merely to yoke particular individuals to the specific torts charged in the complaint").

*4 Although the Seventh Circuit has recognized a § 1983 conspiracy claim when a police officer attempts to cover up unlawful conduct, the court has stated that the basis for this type of claim lies in the denial of a plaintiff's right of access to the courthouse. *See, e.g., Bell v. City of Milwaukee,* 746 F.2d 1205, 1261 (7th Cir.1984) (holding that obstruction of legitimate efforts to seek redress for a killing by a police officer interfered with the due process right of access to the courts where true circumstances surrounding victim's death were not revealed until twenty years later and victim's father, lacking crucial information about his son's death, had previously been forced to settle for a paltry sum). As the Seventh Circuit later explained, the "cornerstone of our decision in *Bell* was that the conspiracy had prevented a full and open disclosure of facts crucial to the cause of action, rendering hollow the plaintiffs' right of access."*Vasquez v. Hernandez,* 60 F.3d 325, 329 (7th Cir.1995). In *Vasquez* itself, the court found

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that the cover up "failed to achieve such ends," for the circumstances surrounding the police misconduct at issue were revealed within six months of the incident. *Id.* at 329.The court further noted that the plaintiffs' complaint contained no allegations indicating that they had been prevented from pursuing a tort action in state court or that the value of such an action was reduced by the cover up. *See id.*

As an initial matter, the court finds that Mendez's civil conspiracy count neither alleges any injury over and above the underlying torts at issue nor casts the net of liability over any additional defendants not otherwise reached. Moreover, Mendez has not alleged that he has been prevented from pursuing a tort action or that the value of any such action has been reduced by the cover up. Indeed, the ten-count complaint he has brought in this court suggests that his access to the courts has not been impeded in any way. Under these circumstances, his § 1983 conspiracy count cannot stand. *See, e.g., Ingram v. Jones,* 1996 WL 355365, *2 (N.D.Ill.1996) (dismissing conspiracy count because "concealment of constitutional violations-here false arrest, excessive force, and sexual harassment-does not amount to a separate constitutional violation unless the victim is deprived of access to the courts" and because plaintiffs failed to allege either that they were prevented from suing or that the value of any such action had been reduced); *Antonelli v. Askew,* 1996 WL 131177, *1 (N.D.Ill.1996) (dismissing conspiracy count by explaining that "[b]ecause Antonelli has no independent claim for conspiracy separate and apart from the constitutional violations alleged in Count II through VII of the complaint the court grants defendants' motion to dismiss the § 1983 conspiracy claim alleged in Count I").

Accordingly, defendants' motion to dismiss Count IV is granted.

### C. *Count V: Intentional Infliction of Emotional Distress-Illinois Law*

*5 To state a claim under Illinois law for intentional infliction of emotional distress, Mendez must allege that: 1) defendants' conduct was extreme and outrageous; 2) defendants intended to inflict severe emotional distress or knew there was a high probability that the conduct would cause such

distress; and 3) defendants' conduct did, in fact, cause severe emotional distress. *See Doe v. Calumet City,* 641 N.E.2d 498, 506 (Ill.1994). The Illinois Supreme Court has explained "extreme and outrageous" conduct as follows:

Conduct is of an extreme and outrageous character where "recitation of the facts to an average member of the community would arouse in him resentment against the actor, and lead him to exclaim "Outrageous!"

*Id.* at 507 (citing Restatement (Second) of Torts 46, Comment d, at 73 (1965)). Consideration of whether a defendant has abused a position of power is proper is assessing whether conduct is "extreme and outrageous." *See id.* In fact, police officers have been identified as persons who, in exercising their authority, can become liable for extreme abuses of their positions. *See id.*

The court finds that Mendez has stated a claim for intentional infliction of emotional distress under Illinois law. Mendez has alleged that the officers' conduct was extreme and outrageous, that the officers intended to inflict severe emotional distress or knew that there was a high probability of such, and that he suffered severe emotional distress. Complaint ¶¶ 35-36. Had Mendez limited his allegations to these boilerplate assertions, the court would be inclined to agree with defendants and dismiss this count. However, given that Mendez has included a bevy of factual allegations stating that he was twice beaten by Henniger and O'Doherty and that they formulated a plan to cover up their misconduct in his very presence (in the squad car), which they then executed by instituting false charges against him and making false reports and statements, the court finds that Mendez has stated facts sufficient to make out a claim for intentional infliction of emotional distress.

The court further finds that Mendez's allegations are sufficiently outrageous to satisfy the first element of the cause of action under Illinois law, especially given the abuse of position he alleges and his allegation that the altercation was precipitated by his expressed concern that he was being discriminated against because he was Hispanic. *Cf. Treece v. Village of Naperville,* 903 F.Supp. 1251, 1259 (N.D.Ill.1995) (finding plaintiff's allegations that police officers tried to elicit a bribe from her and then fabricated testimony about her in order to obtain a

phone tap and an indictment were sufficiently outrageous to state a claim for intentional infliction of emotional distress under Illinois law). The court notes that Mendez alleges more than simple misconduct-indeed he alleges more than merely the use of excessive force-in effecting his arrest. Rather, he alleges that the motivation for his arrest and subsequent beating was discriminatory, that the officers conspired during the ride to the station to cover up their misconduct in arresting and beating him, that they beat him again at the station, and that they then attempted to cover up their misconduct. This case is thus distinguishable from the police misconduct cases defendants cite,[FN5] in which plaintiffs alleged that officers used excessive force in effecting an arrest but apparently levied no further allegations of misconduct.

> FN5.*Carr v. Village of Richmond,* 1996 WL 663921 (N.D.Ill.1996); *McNamara v. Foley,* 1998 WL 409412 (N.D.Ill.1998).

*6 Accordingly, defendants' motion to dismiss is denied as to Count V.

### D. *Count VII: Malicious Prosecution-Illinois Law*

To state a claim under Illinois law for malicious prosecution, Mendez must allege facts showing that: 1) defendants commenced or continued an original criminal or civil judicial proceeding against him; 2) the proceeding was terminated in his favor; 3) there was no probable cause for the proceeding; 4) defendants acted with malice; and 5) he was damaged as a result. *See Swick v. Liautaud,* 662 N.E.2d 1238, 1242 (Ill.1996). Defendants argue that Count VIII must be dismissed because Mendez has insufficiently pled the second element-termination of the criminal proceeding in his favor-by failing to allege facts demonstrating that the criminal charges against him were terminated for reasons indicative of innocence.

Mendez alleges that both of the charges against him "were dismissed and the case was terminated in [his] favor."Complaint ¶ 20. He also alleges that officers Henniger and O'Doherty wrongfully charged him with battery and resisting a peace officer and further charges that the officers "made out false and incomplete reports and gave a false and incomplete version of the events to their superiors."Complaint ¶ 17. Taking these allegations as true and drawing all

reasonable inferences therefrom in Mendez's favor, the court finds that Mendez has sufficiently pled the second element of a claim for malicious prosecution under Illinois law.

The court disagrees with defendants' contention that Mendez has not pled enough facts or the right type of facts to survive a motion to dismiss. Simply speaking, defendants require too much. As far as this court can tell, at the pleading stage Illinois simply requires that the plaintiff plead facts indicating that the termination was in plaintiff's favor. Mendez has done this. He has clearly and unequivocally pled that the proceeding was terminated in his favor, and the court can reasonably infer from the factual allegations in his complaint that the proceeding was groundless. The entire thrust of his complaint is that he was falsely arrested, falsely charged, and made the target of false reports so that officers Henniger and O'Doherty could conceal their own misconduct. Accordingly, the court finds that Mendez has presented "direct or inferential allegations that 'there existed a lack of reasonable grounds to pursue the criminal prosecution." ' *Ingram v. Jones,* 1997 WL 323538, *2 (N.D.Ill.1997) (citing *Swick,* 662 N.E.2d at 1243).

Defendants appear almost to reverse the import of Illinois's decision to adopt the majority rule that "[i]n the civil malicious prosecution context ... a criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the proceeding via a *nolle prosequi unless* the abandonment is for reasons *not indicative* of the innocence of the accused."*Swick,* 662 N.E.2d at 1242-43 (emphasis added). Although the burden of proving a favorable termination (i.e., a termination *consistent* with innocence) remains with the plaintiff under Illinois law, *see id.* at 1243, the point is that this is a proof rather than a pleading issue once the plaintiff has alleged facts from which the court can reasonably infer favorable termination. *See id.*(stating that "[o]nly when a plaintiff establishes that the *nolle prosequi* was entered for reasons consistent with his innocence does the plaintiff meet his burden of proof).

*7 The Illinois Supreme Court has twice indicated in recent years that a plaintiff should have the opportunity to present evidence of favorable termination, an opportunity Mendez does not have at

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 202907 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

this stage of the litigation. *See Swick,* 662 N.E.2d at 1243;*Cult Awareness Network v. Church of Scientology International,* 685 N.E.2d 1347, 1354 (Ill.1997). In *Swick,* the plaintiff merely alleged that the charges against him had been nol-prossed because of the "absence of any showing of evidence indicating [his] guilt" and subsequently failed to present evidence at trial regarding the reasons for the entry of the *nolle prosequi. Swick,* 662 N.E.2d at 1242-43. In remanding the case for a new trial on the malicious prosecution count, the court in no way indicated that the count was insufficiently pled; rather, the court remanded due to the lack of proof *at trial* regarding the reasons for the *nolle prosequi.*[FN6]*Id.* at 1243.One year later, in *Cult Awareness Network,* the Illinois Supreme Court stated the point even more clearly-and in the context of reversing a trial court's decision to grant a defendant's motion to dismiss:

> FN6. Recognizing that it had "clarified a plaintiff's burden of proof in a malicious prosecution action and decided an issue of first impression whose resolution was not clearly foreshadowed," the court explained that "[f]airness requires that Swick be given the opportunity to prove that the *nolle prosequi* order was entered in a manner indicative of his innocence."*Swick,* 662 N.E.2d at 1243.

Having adopted the Restatement approach, we find that plaintiff's complaint in this case, which alleges that each of the underlying actions was terminated in its favor either by the entry of summary judgment or by dismissal (voluntary and involuntary), satisfies the favorable termination requirement, at least for purposes of defendant's motion to dismiss under section 2-615. Whether or not these dispositions ultimately are proved by plaintiff to be indicative of a lack of probable cause remains a question of fact which cannot be answered at this stage of the litigation.

*Cult Awareness Network,* 685 N.E.2d at 1354. The court went on to cite *Swick* for the proposition that "*at trial,* plaintiff must adduce evidence to meet its burden of proof that the prior proceedings were terminated under circumstances indicative of plaintiff's innocence." *Id.* (emphasis added).

Accordingly, the court denies defendants' motion

to dismiss Count VII.

*E. Punitive Damages Claims for Pendent State Law Counts*

Defendants have moved to strike Mendez's claims for punitive damages in each of his pendent state law counts, Counts V-X. As an initial matter, the court notes that Mendez requests punitive damages pursuant to only four of these six counts, Counts V-VIII. Accordingly, defendants' request is moot as to Counts IX-X.[FN7]

> FN7. In light of Mendez's decision not to seek punitive damages in Counts IX-X and the arguments he makes in his Response to the defendants' motion to dismiss, it appears that Mendez seeks punitive damages only against officers Henniger and O'Doherty and not against the Village of Franklin Park. If this is not the case, Mendez should so inform the court.

The court agrees with defendants that Mendez's claim for punitive damages under Count V-intentional infliction of emotional distress-must be stricken. The Illinois Supreme Court has unequivocally held that punitive damages are not available in an action for intentional infliction of emotional distress under Illinois law. *See Knierim v. Izzo,* 174 N.E.2d 157, 165 (Ill.1961) (holding that "punitive damages cannot be sanctioned as an additional recovery in [an action for intentional infliction of emotional distress]. Since the outrageous quality of the defendant's conduct forms the basis of the action, the rendition of compensatory damages will be sufficiently punitive"); *Littlefield v. McGuffey,* 954 F.2d 1337, 1345 n.3 (7th Cir.1992) (stating that "[u]nder Illinois common law, punitive damages are not available in an action for intentional infliction of emotional distress because outrageous conduct is an element of the action").

*\*8* At this time, the court cannot find, however, that Mendez's claims for punitive damages with respect to Counts VI-VIII must be stricken. Defendants contend that these claims are barred by the Illinois Governmental and Governmental Employees Tort Immunity Act, 745 ILL. COMP. STAT. § 10/1-101*et seq.* ("Illinois Tort Immunity Act"). Specifically, defendants rely on section 10/2-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 202907 (N.D.Ill.)
(Cite as: Not Reported in F.Supp.2d)

213,[FN8] which states:

> FN8. Although defendants also make passing reference to 745 ILL. COMP. STAT. § 10/2-102, they do not discuss how this provision applies to this case at bar and expressly state in their Reply that their analysis "will focus solely on the prohibition of punitive damages against the individual officers *as announced in 745 ILCS 10/2-213.*" Reply at 14 n.3 (emphasis added). Accordingly, the court treats their motion to strike Mendez's punitive damages claims in regards to Counts VI-VII as based solely on Section 2-213.

Notwithstanding any other provision of law, a public employee is not liable to pay punitive or exemplary damages in actions brought against the employee based on an injury allegedly arising out of an act or omission occurring within the scope of employment of such an employee serving in a position involving the determination of policy or the exercise of discretion when the injury is the result of an act or omission occurring in the performance of any legislative, quasi-legislative or quasi-judicial function, even though abused.

*Id.* § 10/2-213.

Mendez points out that Section 2-213 limits the bar against punitive damages to injuries resulting from "an act or omission occurring in the performance of any legislative, quasi-legislative or quasi-judicial function."It is not apparent to the court that defendants' conduct, which Mendez alleges encompasses various nefarious activities, constitutes performance of a legislative, quasi-legislative, or quasi-judicial function, and defendants have not explained how the alleged conduct constitutes performance of any of these functions. Moreover, defendants have failed to cite any case construing Section 2-213 [FN9] or any analogous case finding that allegations of abusive and improper conduct by a public employee or official constitutes performance of a legislative, quasi-legislative, or quasi-judicial function.[FN10] Accordingly, the court denies defendants' motion to strike Mendez's punitive damages claims with respect to Counts VI-VIII without prejudice to raising the issue again with proper explanation and support in another motion to dismiss or in a motion for summary judgment.

FN9. Only one of the cases defendants cite even mentions Section 2-213, and in that case, the court expressly declined to address the applicability of Section 2-213 because it held that the defendants were immune from the plaintiff's punitive damages claims under another section of the Illinois Tort Immunity Act, Section 2-102. *See Reese v. May, 955 F.Supp. 869, 877 (N.D.Ill.1996).*

FN10. Two of the cases defendants cite-*Magnuson v. Cassarella,* 813 F.Supp. 1321 (N.D.Ill.1992), and *Jones v. Village of Villa Park,* 815 F.Supp. 249 (N.D.Ill.1993)-do not address statutory immunity but rather address the doctrine of public official immunity under Illinois common law; these cases shed no light on whether the conduct alleged in this case constitutes performance of a legislative, quasi-legislative, or quasi-judicial function. The other case defendants cite-*Reese, 955 F.Supp. at 876-77*-does discuss, albeit under Section 2-102 rather than Section 2-213, whether certain challenged police conduct constituted performance of a quasi-judicial function, but the court squarely rejected this contention. Consequently, *Reese* provides no support for defendants' position.

## III. *CONCLUSION*

For the foregoing reasons, defendants' motion to dismiss is denied as to Counts III, V, and VII but granted as to Count IV. Defendants' motion to strike Mendez's claims for punitive damages is granted as to Count V, denied as to Counts VI-VIII, and denied as moot as to Counts IX-X.

N.D.Ill.,1999.
Mendez v. Henniger
Not Reported in F.Supp.2d, 1999 WL 202907 (N.D.Ill.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.