08-721.091-RSK                                                    July 1, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LINDA SRONKOSKI, | ) |
| Plaintiff, | ) |
| v. | ) No. 08 C 721 |
| SCHAUMBURG SCHOOL DISTRICT, NO.54 | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Before the court is the plaintiff's motion to compel. For the reasons explained below we grant the plaintiff's motion in part and deny it in part.

## BACKGROUND

Plaintiff Linda Sronkoski alleges that the defendant Schaumburg School District, No. 54 (the "District") violated the Americans with Disabilities Act ("ADA") by failing to reasonably accommodate her diabetes and related visual impairment. She further alleges that the District fired her from her position as a special-education teacher's assistant because of her disability. The crux of the District's defense, and one of several arguments supporting its pending summary-judgment motion, is that Sronkoski refused to take reasonable steps to manage her diabetes and that in doing so she threatened the safety of her students, justifying her

termination.  In her motion to compel, Sronkoski argues that she is entitled to the unredacted minutes and the audio recordings of two closed-session meetings of the District's Board of Education (the "Board"), dated November 2, 2006 and November 16, 2006.  We have reviewed the unredacted minutes and the audio recordings *in camera* and conclude that the portions of those materials concerning Sronkoski — her medical condition and her employment — are clearly relevant to her claim.[1]  See Fed. R. Civ. P. 26 (b)(1).  But the District contends that the materials are privileged under the federal deliberative-process privilege and/or Illinois's Open Meetings Act, 5 ILCS 120/1.

## DISCUSSION

A. **The Deliberative Process Privilege**

The deliberative-process privilege,

> protects communications that are part of the decision-making process of a governmental agency. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150-152, 95 S.Ct. 1504, 1516-1517, 44 L.Ed.2d 29. Since frank discussion of legal and policy matters is essential to the decisionmaking process of a governmental agency, communications made prior to and as a part of an agency determination are protected from disclosure. Id. at 151, 95 S.Ct. at 1516-17. Communications made subsequent to an agency decision are, however, not similarly protected. Id. at 152, 95 S.Ct. at 1517. The deliberative process privilege may be overcome where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality. Cf. Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 868 (D.C.Cir.1980)

---

[1] Certain other materials, identified at the conclusion of this opinion, are irrelevant to this lawsuit and the District will not be required to produce them.

> (the privilege should be applied "as narrowly as consistent with efficient government operation"); Black v. Sheraton Corp. of America, 564 F.2d 531, 545 (D.C.Cir.1977).

United States Farley, 11 F.3d 1385, 1389 (7th Cir. 1993). We conduct a two-step inquiry to determine whether the privilege entitles the District to withhold relevant information. See Tumas v. Board of Educ. of Lyons Twp. High School Dist. No. 204, No. 06 C 1943, 2007 WL 2228695, *2 (N.D. Ill. July 31, 2007). First, we must decide whether the District has shown that the privilege applies. Id. If it does apply, we must then decide whether Sronkoski has demonstrated a "particularized need" for the information that outweighs the need for confidentiality. Id.

1.  *Whether the privilege applies.*

Sronkoski does not dispute that municipal bodies may invoke the privilege in federal court, see id. at *5, but contends that the District cannot satisfy the privilege's elements. Only "pre-decisional" and "deliberative" matters are protected. Id. at *2.[2] Communications are pre-decisional if the "information was generated before the adoption of an agency policy," and deliberative if they involve the "give and take of the consultative process." Id. (citations and internal quotation marks omitted). The privilege

---

[2] Sronkoski does not dispute that the "procedural" elements of the privilege are satisfied. See Tumas, 2007 WL 2228695, *2 (The party opposing production must show that "(1) someone with control over the matter made a formal claim of privilege after personally considering the matter; (2) the person with control showed precise and certain reasons for keeping the documents confidential; and (3) the documents were specifically identified.").

does not apply to "purely factual material," but does apply to "factual matters inextricably intertwined with" pre-decisional policy discussions. See Enviro Tech Intern., Inc. v. United State Environmental Protection Agency, 371 F.3d 370, 374-75 (7th Cir. 2004). Sronkoski argues that the November 16, 2006 board meeting was not pre-decisional because the Board decided to terminate her at "[that] very meeting."[3] We disagree. The relevant discussions predate the final decision terminating Sronkoski, which was made by a unanimous vote after the Board returned to open session. (See Minutes of Board Meeting dated Nov. 16, 2007, attached as Ex. 3 to Def.'s Resp. to Pl.'s Mot. to Compel, at 10.); see, e.g., Enviro Tech, 371 F.3d at 375 (communications are pre-decisional if they are "actually [a]ntecedent to the adoption of an agency policy") (citation and internal quotation marks omitted). We also find that the meetings were "deliberative" — the Board discussed Sronkoski's situation and considered options including, but not limited to, terminating her employment. See, e.g., Rainey v. Plainfield Community Consolidated School Dist. No. 202, No. 07 C 3566, 2008 WL 4775975, *4 (N.D. Ill. Oct. 24, 2008) (concluding that the privilege applied to the defendant's closed-session meetings in which it discussed the plaintiff's allegations of racial discrimination). Although the audio recordings include factual

---

[3] The November 2, 2006 meeting, which the District disclosed only after Sronkoski filed her motion to compel, is plainly pre-decisional and Sronkoski has not sought to supplement her motion to argue otherwise.

information, it is "intertwined" with the policy matters that the Board was considering. We conclude that the deliberative-process privilege applies.

> *2. Whether Sronkoski has shown a particularized need for the materials that outweighs the District's need for confidentiality.*

"Under the ADA, two distinct categories of disability discrimination claims exist: failure to accommodate and disparate treatment." Foster v. Arthur Andersen, LLP, 168 F.3d 1029, 1032 (7th Cir. 1999). Sronkoski's complaint could be construed to allege both, (see Compl. ¶¶ 14-16), and the District's memorandum in support of its summary-judgment motion addresses both. See Timmons v. General Motors Corp., 469 F.3d 1122, 1125 (7th Cir. 2006) ("It is important for plaintiffs to be clear about whether they are pressing disparate treatment or failure-to-accommodate claims (or both) because the two are analyzed differently."). Applying the analytical framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973), the District argues that it has articulated a legitimate, non-discriminatory reason for her termination: inattentiveness and erratic behavior stemming from her alleged refusal to treat her diabetes. See Hoffman v. Caterpillar, Inc., 256 F.3d 568, 572 (7th Cir. 2001) ("As with other federal anti-discrimination statutes, an ADA plaintiff may prove disparate treatment either by presenting direct evidence of discrimination, or she may prove it indirectly

using the McDonnell Douglas burden-shifting method."); cf. id. ("In failure to accommodate claims, unlike disparate treatment claims, the McDonnell Douglas burden-shifting approach is not necessary or appropriate."). Sronkoski must show, in response, that the District's stated reasons for terminating her are pretextual. See Lloyd v. Swifty Transp., Inc., 552 F.3d 594, 601 (7th Cir. 2009) (If the ADA defendant articulates a legitimate, non-discriminatory reason for an adverse employment action, the "plaintiff must then prove by a preponderance of the evidence that the defendant's reasons are pretextual."). The District makes a similar argument with respect to Sronkoski's reasonable-accommodation claim, in support of which she must show that the District fired her "because of" her disability. Foster, 168 F.3d at 1032-33. According to the District, it did not fire Sronkoski because she had diabetes; it fired her because she failed to take steps to control it. See Siefken v. Village of Arlington Heights, 65 F.3d 664, 666 (7th Cir. 1995).

Sronkoski contends that she has a "particularized need" for the closed-session materials, which may reflect the District's true "motive and basis" for terminating her. See Kodish v. Oakbrook Terrace Fire Protection District, 235 F.R.D. 447, 452 (N.D. Ill. 2006) ("[I]n order for Plaintiff to pursue his § 1983 civil rights claim, he must attempt to ascertain the motive and basis for the Fire District's decision to terminate him."). We agree, and we are

not persuaded under the circumstances that other available evidence is adequate. The District argues, for example, that Sronkoski was told why she was fired and therefore she does not "need" any additional information. (Id. at 5.) But Sronkoski is not required to accept the District's representations at face value. See McDonnell Douglas, 411 U.S. at 804. It is true, as the District points out, that Sronkoski has deposed some of the individuals involved in the decision-making process. See Rainey, 2008 WL 4775975, at *3 ("The pertinent decisionmakers are available to be deposed, so plaintiff has other means of obtaining the pertinent information."). But we respectfully disagree with the court in Rainey insofar as it concluded that deposition testimony is an adequate substitute for contemporaneous evidence in a discrimination case. Cf. Alvarado v. Board of Trustees of Montgomery Community College, 928 F.2d 118, 122-23 (4th Cir. 1991) (a contradiction between *post hoc* and contemporaneous explanations for an employment action is evidence of pretext). The District also argues that disclosure would "inhibit Board members from having frank discussions about other employment matters in the future." Our Court of Appeals has acknowledged that this is an important interest, but one which must give way in the appropriate case. See Farley, 11 F.3d at 1389; Hartman v. Lisle Park District, No. 01 C 1904, 2002 WL 448999, *1 (N.D. Ill. Mar. 22, 2002) (concluding that the plaintiff's need for the minutes of closed-

session board meetings outweighed the defendant's need for confidentiality). Given the nature of the District's defense in this case, we think the plaintiff's particularized need for the information outweighs the defendant's need for confidentiality.

**B.   The Open Meetings Act**

The District argues, in the alternative, that the closed-session materials are privileged under Illinois's Open Meetings Act ("OMA"). The relevant portion of the OMA provides that, absent the affected public body's consent, "the verbatim record of a meeting closed to the public shall not be open for public inspection or subject to discovery in any administrative or judicial proceeding other than one brought to enforce this Act." 5 ILCS 12/2.06(e). This is not a proceeding "brought to enforce" the Act, but we are not bound to apply state-law privileges in cases where federal law supplies the rule of decision. See Fed. R. Evid. 501; Memorial Hospital for McHenry County v. Shadur, 664 F.2d 1058, 1061 (7th Cir. 1981) ("Because state law does not supply the rule of decision as to the [plaintiff's Sherman Act claim], the district court was not required to apply state law to determine whether the material sought by Dr. Tambone is privileged."); Kodish, 235 F.R.D. at 450 (concluding that the federal common law of privileges applied where the plaintiff's principal claim arose under 42 U.S.C. § 1983). This does not mean, however, that the OMA is irrelevant. "A strong policy of comity between state and federal sovereignties impels

federal courts to recognize state privileges where this can be done at no substantial cost to federal substantive and procedural policy." Memorial Hospital, 664 F.2d at 1061 (quoting United States v. King, 73 F.R.D. 103, 105 (E.D.N.Y. 1976)). In Memorial Hospital, our Court of Appeals identified some of the considerations that should guide our decision whether to apply the OMA privilege in this case:

> First, because evidentiary privileges operate to exclude relevant evidence and thereby block the judicial fact-finding function, they are not favored and, where recognized, must be narrowly construed. Second, in deciding whether the privilege asserted should be recognized, it is important to take into account the particular factual circumstances of the case in which the issue arises. The court should weigh the need for truth against the importance of the relationship or policy sought to be furthered by the privilege, and the likelihood that recognition of the privilege will in fact protect that relationship in the factual setting of the case.

Id. at 1061-62 (internal citations and quotation marks omitted). The District relies chiefly on Tumas, which relied on the policy rationale behind the deliberative-process privilege to apply the OMA in a federal civil-rights case. See Tumas, 2007 WL 2228695, *4, 8. In Kodish, by contrast, the court declined to apply the OMA and cited its misgivings about applying the privilege in a civil-rights action against a state actor. Kodish, 235 F.R.D. at 451 ("'[C]aution should especially be taken in recognizing a privilege in a federal civil rights action, where any assertion of privilege must overcome the fundamental importance of a law meant to protect citizens from unconstitutional state action.'") (quoting Hinsdale

v. City of Liberal, Kansas, 961 F.Supp. 1490, 1495 (D.Kan. 1997). The Kodish court's concerns apply equally in this case under the ADA. See also Birkett v. City of Chicago, 705 N.E.2d 48, 52 (Ill. 1998)(Where the government is a party to an action, "it is unjust to afford the government the benefit of withholding relevant evidence while requiring its opponent to adhere to the established rules of open discovery.").[4] The court also took into account the availability of the attorney-client privilege to protect the defendant's interests. Kodish, 235 F.R.D. at 452 ("The interests served by the open meeting privilege are overcome by the need for probative evidence and are adequately protected by the attorney-client privilege."). That privilege addresses some of the specific concerns that the District has raised. (See, e.g., Def.'s Resp. to Pl.'s Mot. to Compel at 3 (noting that District employees explained to the Board the "general legal guidance provided by the District's attorneys in this matter.").) But the District does not argue that the privilege applies, cf. Kodish, 235 F.R.D. at 452-54, and its attorney specifically declined to invoke the privilege in correspondence with Sronkoski's attorney. (See Letter dated Dec. 5, 2008, attached as Ex. C to Pl.'s Mot. to Compel, at 2 (stating that the District was not asserting attorney-client privilege with respect to the materials documenting the Board meetings at which

---

[4]/ Birkett involved a different question — whether Illinois recognized the deliberative-process privilege — but we think the Illinois Supreme Court's concerns are relevant in this case. See Tumas, 2007 WL 2228695, *7 n.5 (citing Birkett and noting that the "Board's role as a defendant in this case weighs in the Plaintiff's favor").

Sronkoski's discharge was discussed).) This leaves the general, institutional justifications supporting deliberative confidentiality, which we have already concluded are outweighed in this case by Sronkoski's need for the closed-session materials. In sum, we conclude that the "particular factual circumstances" of this case warrant disclosure. Memorial Hospital, 664 F.2d at 1061-62.

## CONCLUSION

Plaintiff's motion to compel (34) is granted in part and denied in part. The defendant shall produce the unredacted minutes and the audio recording of the November 16, 2006 closed-session meeting. With respect to the November 2, 2006 closed-session meeting, the defendant shall produce the portion of the meeting included on the CD copy submitted to the court and identified as "Side 2." The court finds that the portion of that meeting identified as "Side 1," involving other matters and other employees, does not contain any information relevant to this lawsuit. The defendant shall produce the minutes for the November 2, 2006 closed-session meeting, but may redact those items not related to Sronkoski. Plaintiff's request for fees and costs incurred in connection with its motion is denied. See Fed. R. Civ. P. 37(a)(5)(A)(ii) (the court "must not order" the losing party to pay fees and costs when its objection, although ultimately unsuccessful, is "substantially justified"). A status hearing is

set for July 16, 2009 to set a briefing schedule on defendant's motion for summary judgment.


    DATE:    July 1, 2009


    ENTER:   _____
             John F. Grady, United States District Judge